# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:20-cv-00418-MR

| | |
|---|---|
| TRACEY TERRELL GRADY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> ) <br> B.S., et al., ) <br> ) <br> Defendants. ) <br> _____ ) | **ORDER** |

**THIS MATTER** is before the Court on the following:

(1) Initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983 [Doc. 1], see 28 U.S.C. §§ 1915(e)(2), 1915A;

(2) Plaintiff's "Motion to Proceed under Forma Pauperis as Indigent, and pursuant to section 28 U.S.C. [ ] 1915A [illegible] and to proceed without Exhausting Grievance By Law" [Doc. 8];

(3) Plaintiff's Motion to Appoint Counsel [Doc. 11]; and

(4) Plaintiff's "Motion to Stay Order Demanding Filing Fees in Legal Objection, 28 U.S.C. 1915(b)(1) and to Strike the Grievance Exhausting Illegally filed Clerk" [Doc. 13].

## I. BACKGROUND

Pro se Plaintiff Tracy Terrell Grady ("Plaintiff") is a pre-trial detainee currently incarcerated at Union County Jail in Monroe, North Carolina. [See Doc. 1 at 4]. Plaintiff filed this action on July 23, 2020, pursuant to 42 U.S.C. § 1983, in the Eastern District of North Carolina, related to incidents allegedly occurring in Monroe, North Carolina.[1] [Doc. 1]. The case was promptly transferred to the Western District. [Doc. 3]. Plaintiff names the following individuals as Defendants in this matter: (1) Steve Morton, identified as a Sergeant and rape investigator with the Monroe Police Department (MPD); Stephen Helms, identified as an MPD lineup administrator; Kyle Purger, Baucom Sawyer, and Michele Shoultes, all MPD officers; Sharon Hinton, identified as an State Bureau of Investigation (SBI) Forensic Scientist; "all MPD staff;" and B.S.[2], identified as the "victim" of Plaintiff's alleged rape. Plaintiff purports to sue all Defendants in their official and individual capacities, except Defendant B.S., whom he sues in her individual capacity

---

[1] Plaintiff also purports to proceed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). [Doc. 1 at 3]. Plaintiff, however, has not named any federal actors as Defendants in this matter and, therefore, fails to state claims under Bivens.

[2] Plaintiff is instructed to refer to the alleged rape victim by her initials rather than by her full name. The Court will instruct the Clerk to redact the alleged rape victim's name from the documents that have been filed in this case and to replace her name with the initials B.S. in the docketing system.

2

Case 3:20-cv-00418-MR   Document 23   Filed 12/03/20   Page 2 of 12

only.

Plaintiff alleges, in pertinent part, as follows. Plaintiff encountered B.S. in the parking lot of a Waffle House restaurant in Monroe, North Carolina, where B.S. offered to engage in sexual intercourse with Plaintiff in exchange for money. Plaintiff declined. Thereafter, B.S. got into her mother's stolen vehicle, followed Plaintiff to the back of the Waffle House parking lot, and blocked Plaintiff in with her vehicle. B.S. then got in Plaintiff's vehicle and refused to get out and became violent, demanding money to buy drugs. Plaintiff grabbed B.S. by her throat to get her out of his car. She started crying and Plaintiff told her that he would get B.S. drugs from his friend if she agreed to pay Plaintiff back. Thirty minutes later, Plaintiff's drug dealer friend arrived with a bag of heroin. B.S. immediately cooked the heroin and injected it into her arm. B.S. then defecated and urinated on herself while still in the front seat of Plaintiff's car. Plaintiff gave B.S. a towel to clean herself with and told her to get out of his car. She eventually left the car, telling Plaintiff, "you will be sorry ni**er." [Doc. 1 at 7].

On May 18, 2019, Plaintiff called B.S. about the money for the heroin. B.S. answered the call and gave the phone to her boyfriend, Mike Hernandez, who falsely accused Plaintiff of rape. Defendant Steve Morton located Plaintiff from this phone call and attempted to question Plaintiff at his

home, where Plaintiff asserted his rights under Fifth Amendment and asked for an attorney. [Id.]. On May 20, 2019, Defendants Helms and Morton conducted a photo lineup wherein B.S. "picked the wrong suspect" and Helms and Morton then coerced B.S. into identifying Plaintiff as her rapist instead. [Id.].

On May 24, 2019, Plaintiff was arrested by Defendants Kyle Purger and Baucom Sawyer who "abused" Plaintiff by "calling [him] ni\*\*er and saying [he] should be hung from a tree and [his genitals] cut off." [Id. at 7-8]. Plaintiff was not read his Miranda rights at this time. [Id. at 7]. Defendants Purger and Sawyer also used excessive force on Plaintiff witnessed by Defendant Morton, who failed to intervene. [Id. at 5]. Either Defendant Morton or Defendant Helms listened to Plaintiff's phone calls from the Jail to his mother, which Plaintiff claims is illegal and an "invasion of privacy," and Defendant Morton put these calls "into evidence as a confession." [Id.].

Further, Defendants Morton, Michele Shoultes, and Sharon Hinton, the SBI Forensic Scientist, all conspired together to tamper with the D.N.A. results from swabs taken of Plaintiff and B.S. Plaintiff alleges these acts constituted felony obstruction of justice. Plaintiff purports to sue B.S. for defamation. [Id. at 6]. Plaintiff also generally claims "false arrest" by the "Monroe P.D." and excessive force and failure to protect by Defendants

Sawyer and Purger in violation of the Eighth Amendment. [Id.].

On February 13, 2020, Plaintiff filed a Complaint with this Court against Defendants Morton, Sawyer, Helms, and B.S., alleging facts and asserting claims against these Defendants substantially similar to Plaintiff's allegations and claims in the instant case. [Civil Case No. 3:20-cv-00095-MR, Doc. 1]. On initial review in that case, the Court found Plaintiff failed to state a claim against any Defendant and allowed Plaintiff 30 days to amend his Complaint to show that the Younger abstention doctrine does not apply and to otherwise properly state a claim. [Id., Doc. 13]. Plaintiff timely filed an Amended Complaint, adding Sharon Hinton, Kyle Purger, and Michele Soultes as Defendants. [Id., Doc. 14]. The Defendants in the two actions, therefore, are now identical. Further, the substantive allegations and purported claims in the instant Complaint are overlapping and duplicative of the allegations and claims of the Amended Complaint in Case No. 3:20-cv-95, which was instituted first. Initial review of the Amended Complaint is pending.

For injuries, Plaintiff claims lost wages, mental anguish, physical pain [Id. at 6]. For relief, Plaintiff seek certain injunctive relief and $500,000.00 in monetary damages.

On July 31, 2020, the Clerk sent Plaintiff an Order of Instructions in which Plaintiff was instructed, among other things, that "[l]etters sent to the

5

Clerk of Court or Judge will not be answered. Only Motions will be ruled on by the Court." [Doc. 5 at ¶ 5]. Plaintiff was also instructed that, "[a] prisoner who brings a civil action is required to pay the full filing fee, even if he/she has been permitted to proceed *in forma pauperis* without having to prepay the fee." Namely, "[i]n the event that the prisoner is unable to pay the full filing fee at the time the action is filed, the Court is required to assess an initial partial filing fee and, after that is made, the prison at which the prisoner is incarcerated is required to forward to the Clerk's office monthly payments of 20% of the preceding month's income credited to his account until the full filing fee is paid." [Id. at ¶ 2]. The Order of Instructions is consistent with the terms of 28 U.S.C. § 1915(b)(2).[3]

On August 10, 2020, Plaintiff filed a motion seeking to proceed without paying the $400.00 filing fee[4] and requesting the Court "waive" the "grievance exhausting requirement." [Doc. 8]. On August 13, 2020, the Clerk entered its standard Order ("Clerk's Order") allowing Plaintiff to proceed without prepayment of the filing fee and ordering that Plaintiff pay

---

[3] Section 1915(b)(2) provides, "[a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid." 28 U.S.C. § 1915(b)(2).

[4] The filing fee for this action is $350.00, not $400.00. [Doc. 10 at 1].

6

an initial partial filing fee of $18.00 and make subsequent payments consistent with 28 U.S.C. § 1915(b)(2). [Doc. 10].

On August 10, 2020, Plaintiff moved for appointment of counsel. [Doc. 11]. Then, on August 26, 2020, Plaintiff filed a notice of appeal from the Clerk's Order requiring the initial $18.00 payment and directing monthly prisoner payments. [Doc. 12]. The appeal remains pending.[5] On the same day that Plaintiff appealed, he moved this Court "to stay filing fees and to strike the Order" and asked the Court to "strike" the "grievance exhausting requirement on the grounds the case is still pending [and] the incident did not [occur] in jail or prison, but in the town of Monroe, N.C." [Doc. 13].

Plaintiff has also filed several improper letters directed to the Clerk of Court and to the undersigned in contravention of the Order of Instructions

---

[5] Because Plaintiff's appeal is undoubtedly interlocutory and does not depend on the ultimate disposition of this action, the Court will conduct initial review and address the pending motions before it. See United States v. Jones, 367 Fed. App'x 482, 484 (4th Cir. 2010) ("[T]he district court does not lose jurisdiction when the litigant takes an appeal from an unappealable order.") (citation omitted). What is more, the District Court does not lose jurisdiction to proceed as to matters that may aid in the appeal. Grand Jury Proceedings Under Seal v. U.S., 947 F.2d 1188, 1190 (4th Cir. 1991) (citation omitted). Here, disposition of the pending motions clarifies the record in this matter, particularly relative to the Clerk's Order from which Plaintiff has appealed, for review by the Circuit and, thus, aids the appeal. Id. (holding that district court's written order memorializing oral ruling aided appeal by giving Court of Appeals written order to review, and, thus, notice of appeal between the orders did not deprive the district court of jurisdiction to issue written order).

7

sent to Plaintiff when he filed this action. [See Docs. 5, 14, 15, 16,[6] 17, 18, 22]. The Court will strike these letters.  <u>Plaintiff is instructed that any future such filings will not be addressed and will also be stricken</u>.  The Court notes that in Plaintiff's most recent letter he states that his appeal was made "by mistake, in error" and that he "wish[es] to proceed on [his] refiled Amended Complaint [in] #3:20-cv-00095-MR." [Doc. 22]. As such, it appears Plaintiff recognizes that these actions are synonymous.

## II.  STANDARD OF REVIEW

The Court must review Plaintiff's Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.

---

[6] To the extent the document filed at Docket No. 16 is a motion and not a letter, it is duplicative of other motions filed by Plaintiff and it is denied without further consideration.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

Here, Plaintiff's Complaint is so overlapping and duplicative of the Amended Complaint pending in Case No. 3:20-cv-95 that the Court cannot allow the two actions to proceed simultaneously. Furthermore, there appears no reason in the instant Complaint why Plaintiff filed the instant duplicative action, particularly given his protestations of the required filing fee. Because Plaintiff instituted the proceedings in the other case first, the Court will dismiss the instant action without prejudice. The Court will, therefore, deny Plaintiff's motion to appoint counsel as moot. Plaintiff may, of course, seek leave of court to amend his claims or to join parties in Case No. 3:20-cv-95, as necessary, before the applicable deadlines, should his

9

Amended Complaint in that case survive initial review.

As to Plaintiff's motion to proceed in forma pauperis [Doc. 8], the Court will deny this motion as moot. The Clerk's August 13, 2020 Order [Doc. 10], which has been appealed by Plaintiff, addressed the relief sought by Plaintiff. Although it appears Plaintiff wants to proceed without ever having to pay the filing fee, he did not say as much in his motion. The Court will also deny Plaintiff's motions requesting that the Court "waive" the grievance exhaustion requirement as moot. [See Docs. 8, 13].

Finally, Plaintiff moves "to stay filing fees" and objects to paying the initial partial filing fee and to having monthly payments made from his prisoner account, claiming that he "is NOT legally a prisoner, or housed in a state correctional facility." [Doc. 13]. Plaintiff also seeks a refund of all payments made to date. [Id. at 2]. Plaintiff argues that he did not "agree" to the payments "taken out [of his] account by jail staff" and that he "[does not] have a monthly income to take 20 percent [of]." [Id. at 2; see id. at 4-5]. Thus, it appears Plaintiff argues both he is not subject to 28 U.S.C. § 1915(b) and that payments made by the Jail under the Clerk's Order are improper because Plaintiff has no monthly income. Consistent with the Clerk's Order granting Plaintiff's in forma pauperis status and directing the payment of his filing fee, the Court will deny Plaintiff's motion "to stay filing fees." The Court,

however, makes no suggestion regarding the propriety of the Jail's execution of the Clerk's Order. Even if Plaintiff is correct that the Jail is improperly executing the Clerk's Order, Plaintiff's remedy lies with the Jail grievance system, not with this Court.

## IV. CONCLUSION

In sum, Plaintiff's Complaint is duplicative of the pending Amended Complaint in Civil Case No. 3:20-cv-00095-MR and, as such, the instant action will be dismissed without prejudice. Plaintiff's pending motions will be denied in accordance with the terms of this Order and Plaintiff's improper letters will be stricken from the record in this matter.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) Plaintiff's Complaint [Doc. 1] is **DISMISSED without prejudice**.

(2) Plaintiff's motions [Docs. 8, 11, 13] are **DENIED** in accordance with the terms of this Order.

(3) Plaintiff's letters [Docs. 14, 15, 16, 17, 18, 22] are hereby **STRICKEN** from the record in this matter. Any future improper filings of this nature will also be so stricken.

The Clerk is respectfully instructed to redact the alleged rape victim's name from the documents that have been filed in this case and to replace

her name with the initials "B.S." in CM-ECF and any other records that are visible to the public.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: December 3, 2020

Martin Reidinger
Chief United States District Judge